ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY Appellant, *v.* GUARANTY TRUST COMPANY OF NEW YORK, Respondent.

**Mortgage — construction of railroad mortgage given to secure refunding bonds.**

The language of a railroad mortgage given to secure refunding bonds construed, and *held*, that it is in the highest degree important that there should be strict adherence to its terms, and if a doubt may arise in construction, it should rather be resolved in favor of the bondholder.

*St. L. & S. F. R. R. Co.* v. *Guaranty Trust Co.*, 144 App. Div. 440, affirmed.

(Argued May 24, 1912; decided June 4, 1912.)

39

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 3, 1911, in favor of defendant, upon the submission of a controversy, under section 1279 of the Code of Civil Procedure.

*John W. Dixon* and *Morgan J. O'Brien* for appellant.

*Arthur H. Van Brunt* and *Adrian H. Joline* for respondent.

GRAY, J. The controversy between the parties was over the construction of certain provisions in a mortgage made by the plaintiff, a foreign corporation, operating its lines of railroad in certain other states. The mortgage was made to a trustee, in 1901, to secure an issue of $85,000,000 of "Refunding Mortgage Gold Bonds," maturing July 1, 1951. It contained the following provisions, with respect to the issuance of the bonds. By subdivision A of its second article, $51,574,000, in amount, of the bonds were set apart to take up certain underlying bonds, which were specifically designated. By subdivision B of the article, $10,926,000, in amount, were set apart for use " as, in the judgment of the Railroad Company, shall be required  *  *  *  in the refunding of the underlying bonds." By subdivision C of the article, the residue of the refunding bonds was set apart for various purposes in the development of the railroad company's properties; among them being the construction, or acquisition, of additional rolling stock.

Of the underlying bonds, against which were held refunding bonds, under subdivision A, were the so-called " Five Per Cent. Bonds " and the so-called " Consolidated Mortgage Bonds," of the plaintiff, which matured at dates subsequent to the date of the maturity of the refunding bonds. As to them there were no provisions by which their earlier redemption, or retirement, might be effected. The plaintiff had succeeded in retiring $38,470,000 of the underlying bonds and of the five per cent and consolidated mortgage bonds, there were left

unexchanged the aggregate amount of $1,997,000. All of the refunding bonds reserved under subdivision C have been issued for some one or more of the railroad purposes contemplated and the plaintiff is in need of, and desires, additional rolling stock and equipment. In subdivision A are the following provisions: "Whenever the Railroad Company shall tender or cause to be tendered to the Trust Company, and whether before or after the maturity thereof or the payment thereof, any of the underlying · bonds with all the unmatured coupons thereunto belonging, the Trust Company shall, in exchange therefor, certify and deliver to the Railroad Company, or to its order, refunding bonds of a face amount equal to the face amount of the underlying bonds so received by the Trust Company. * * * Any refunding bonds which shall no longer be required to be reserved for issue and delivery in exchange for, or to take up at or before maturity, the underlying bonds in accordance with the preceding provisions of this subdivision, may, after all the refunding bonds reserved under the following subdivision C of this article shall have been issued, or have been set apart, be certified, issued and delivered in accordance with the provisions of said subdivision C and in addition to the bonds reserved for issue under said subdivision." The plaintiff claims that the $1,997,000 of refunding bonds, reserved for the exchange of the equivalent number of underlying bonds, cannot be required to take them up at maturity, as they do not mature until after the maturity of the refunding bonds. It demands that they should be held by the trustee freed from the limitation of subdivision A and, thus, become available for the acquisition of additional rolling stock required. That presents the question upon this appeal. The Appellate Division, to which court this controversy was submitted, has held against the claim of the plaintiff and, as we think, correctly. That court held that the terms of the mortgage were of such a definite character as to require the interpretation that, until all of the outstanding underlying bonds enumerated were taken up, the amount of refund-

ing bonds necessary for that purpose "could not be released from the express limitations of the mortgage and devoted to other purposes."

The plaintiff bases its claim upon the peculiar language of subdivision A; which provides that "$51,574,000 of the Refunding Bonds, or such less amount thereof as shall be necessary for that purpose, shall be reserved to be issued and delivered in exchange for, or to take up at maturity, or before maturity" underlying bonds, which are described. The clause then contains the provision as to "any refunding bonds which shall no longer be required to be reserved for issue and delivery in exchange for, or to take up at or before maturity, the underlying bonds," which is quoted, in full, above. It is argued, from the language of the subdivision, that it was contemplated that the plaintiff should be the judge of the practicability and necessity of retiring, before maturity, the underlying bonds and, further, that, although it was obligated to hold in reserve a sufficient amount of refunding bonds to retire at, or before, their maturity all underlying bonds maturing before the refunding bonds, there was no obligation imposed upon it to retire these underlying bonds, which mature subsequently. The plaintiff takes the position that, having made every reasonable effort to retire the outstanding five per cent and consolidated mortgage bonds, in question, the refunding bonds originally reserved to be exchanged for them are no longer required for that purpose. If it was the judgment of the railroad company's officers, which was to determine the question of the necessity, or the practicability, of retiring before their maturity underlying bonds, it would have been proper and natural to so state; just as it was stated in subdivision B. The purpose of subdivision B was to furnish from the proceeds of the refunding bonds, therein set apart, the means wherewith to pay premiums necessary in executing the refunding scheme Under its provisions, "$10,926,000 of the refunding bonds, or such less amount thereof, *as in the judgment of the Railroad Company*, shall be required for that pur-

pose, shall be certified and delivered to the Railroad Company for use, *in its discretion,* in the refunding of the underlying bonds," etc. We do not think that the language of subdivision A warrants the construction claimed for it, in the respect argued. The argument that it is unreasonable to hold that there was an obligation imposed upon the railroad company to retire the underlying bonds, which matured at dates subsequent to the maturity of the refunding bonds, is plausible; but it has no real force. The railroad company was not required to do the impossible; but it was under an obligation not to make any use of the refunding bonds, reserved under subdivision A, except in exchange for, or to take up, the underlying bonds designated, while these were outstanding. In providing that " any refunding bonds, *which shall no longer be required to be reserved,* * * * may, after all the refunding bonds reserved under subdivision C shall have been issued, be certified, issued and delivered in accordance with the provisions of subdivision C," a way was left open for the railroad company to release reserved refunding bonds, in the event of underlying bonds, maturing at subsequent dates, being extinguished otherwise than by the use of the refunding bonds. It was a provision made out of abundant caution and it is not for the court to say that financial plans were not possible, under which they might be taken up otherwise than by exchange under this mortgage, or by payment at maturity.

The terms of the mortgage are not unreasonable and the plaintiff should be held strictly to its engagements. The sense of security of the bondholder should not be lessened by any laxity of construction. Holders of these refunding bonds, whether by exchange or by purchase, presumably, have relied upon the conditions of their issue and are entitled to the belief that none of those set apart under subdivision A could be issued, until every one of the underlying bonds had been taken up. They were entitled to consider the refunding plan as one intended to make the mortgage thereunder a first lien upon the

property. To the extent that the new refunding bonds were restricted in their issue, in accordance with the terms of the mortgage, the security promised would be maintained in its integrity. It is in the highest degree important that there should be strict adherence to those terms and, if a doubt may arise in construction, it should rather be resolved in favor of the bondholder. The language of the instrument should be interpreted as it would be by the plain and careful mind. When so read, the intent will be clear that no portion of the refunding bonds, which were reserved to take up outstanding underlying bonds, could be used for the general corporate purposes expressed in subdivision C, until all of the underlying bonds had been retired.

For these reasons, in connection with the views expressed at the Appellate Division, with which we are in accord, the judgment appealed from should be affirmed; but, under the provisions of the submission, without costs.

CULLEN, Ch. J., WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur; VANN, J., absent.

Judgment affirmed.